## J. L. S. HILL vs. EMMA BUGG et al.

1. MARRIED WOMEN: *Separate property. Mortgage.*

Where the husband's property is sold under a mortgage executed in good faith, and is purchased by the wife, it becomes her property, provided she made the payments with her own money. If any part of the money belonged to her husband she will be treated as a trustee of the legal title *pro tanto* for the benefit of his creditors. The husband cannot consider himself debtor to the wife when the law does not so regard him, and convey his property to her as against his creditors. He cannot waive any defense with which the law clothes him in favor of his wife as against his creditors.

2. SAME: *Code of 1857, art. 28, p. 337. Code of 1871, § 1790.*

The proviso to art. 28, p. 337, of Code of 1857 (reënacted in Code of 1871, § 1790), which provides that "neither the husband nor his representatives shall be liable to account to the wife or her representatives for the rents, profits, or income of her separate estate, after the expiration of one year from receipting the same," does not bar the wife's claim if not asserted in one year, but limits the time during which the husband's receipt of the rents, profits, or income shall charge him.

APPEAL from the Chancery Court of *Chickasaw* County.

Hon. W. D. FRAZEE, Chancellor.

The opinion of the court contains a sufficient statement of this case.

It is assigned for error that " The court erred in sustaining the complainant's bill of injunction and in dismissing defendant's cross-bill."

*J. N. Carlisle*, for appellant :

Where the husband invests his means for his wife and children, it may or may not be fraudulent, according to the facts.  Edmondson *v.* Meachum, 50 Miss., 39.   If to hinder and delay creditors, see 9 S. & M., 394.   The transaction must be in good faith.   Hunt *v.* Knox, 34 Miss., 656 ; ib., 377.   A trust deed fraudulent on its face is notice to the purchaser.   Douglass *v.* Bank, 11 S. & M., 471 ; 7 Paige, 568 ; 9 S. & M., 447.   Any stipulation in a deed of trust for benefit of the debtor or his family renders it fraudulent and void.   2 Kent. Com., 535 ; 5 Cow., 347 ; 23 Miss., 75 ; 6 Wall. (U. S.), 78.

The innocence of the creditor, or *cestui que trust*, will not protect the fraudulent acts of the grantor.   Harney *v.* Pack & Clifton, 4 S. & M., 229 ; Pass *v.* Pass, 4 Miss., 516 ; Farmers' Bank *v.* Douglass, 11 S. & M., 469 ; 27 Miss., 167.

Fraud may sometimes be established by strong circumstances, even against positive proof denying it.  6 S. & M., 647.

*Baxter McFarland*, for appellee :

An insolvent debtor may prefer a creditor or a class of creditors.   Ingraham *v.* Grigg, 13 S. & M., 22 ; Hunt *v.* Knox, 34 Miss., 655 ; Mangum *v.* Finncane, 38 ib., 354.   The mortgage of property consumable in its use is not fraudulent *per*

*se*, or notice to purchasers of fraud.   Farmers' Bank *v.* Douglass, 11 S. & M., 469 ; Harney *v.* Pack, 4 ib., 229 ; Ewing *v.* Cargill, 13 ib., 77.   A trust deed to secure future advances is valid.   Hillard v. Cagle, 46 Miss., 309–341 ; Summers & Branin *v.* Roos, 42 ib., 749.

A conveyance is not void merely because it *may* hinder or delay creditors.   It is not so except where to hinder and delay is the *main intent.*   11 S. & M., 469 ; 13 ib., 22.

A sale will not be set aside as fraudulent in fact merely because it is doubtful and suspicious.   White *v.* Trotter, 14 S. & M., 30 ; Foster *v.* Pugh, 12 ib., 416.

A *bona fide* purchaser for value at a trust deed sale will be protected, notwithstanding there may have been fraud between the original parties, of which the purchaser had no notice. Price *v.* Martin, 46 Miss., 489 ; Harrington *v.* Allen & Co., 48 ib., 491 ; Ewing *v.* Cargill, 13 S. & M., 79, 83.   Purchases made with an insolvent debtor's means or money, in the name of a third person, are not within the statute of frauds.   Carlisle *v.* Tindall, 49 Miss., 229 ; Edmonson & Winn *v.* Meachum, 50 ib., 34.

Possession of property by the grantor, after a public forced sale, is no evidence of fraud.   11 S. & M., 337 ; 12 ib., 416 ; 13 ib., 79 ; 42 Miss., 749.   See George's Dig. ("Fraudulent Assignments"), p. 326, § 35 *a.*

Fraud must be charged and proved as laid.   It must be stated in the bill.   Pinson *v.* Williams, 23 Miss., 64–67 ; Carney *v.* Hubbard, 2 S. & M., 108 ; Kidd *v.* Mauley, 26 Miss., 156 ; Bowman *v.* Reilly, 31 ib., 261 ; Fatheree *v.* Fletcher, 31 ib., 265 ; Shaw *v.* Brown, 35 ib., 146 ; Parhurst *v.* McGraw, 24 ib., 134.

CAMPBELL, J., delivered the opinion of the court.

Hill obtained judgment against Thomas E. Bugg in 1870, and had *fieri facias* issued on it levied on certain land, which the sheriff was about to sell when Emma Bugg, wife of Thomas E. Bugg, enjoined the sale, alleging that the land is her

400          HILL vs. BUGG et al.          [Sup. Ct.

Opinion of the court.

property and not liable to the judgment, and that it became·
hers by purchase from the trustee in a deed of trust executed
by said Thomas E. Bugg before said judgment. Hill
exhibited a cross-bill, attacking the title of Emma Bugg and
claiming that the deed of trust mentioned was made to hinder,,
delay, and defraud creditors, and that this was known to Mrs.
Bugg, and that the money with which she purchased and paid·
for the property at the trustee's sale was not her own. Hill.
was a creditor of Thomas E. Bugg, as to the claim which
ripened into said judgment, long before the time when said
trust deed was executed by Thomas E. Bugg. The prayer of
the cross-bill is for cancellation of the trust deed and the deed
to Emma Bugg, and that title of the land be decreed to be in
Thomas E. Bugg and liable to the judgment, and for general
relief. Emma Bugg answered the cross-bill, asserting her
good faith in the purchase, and denying all fraud and notice to·
her of any in the transaction, and averring that she bought and
paid for the property in question with her own money. The·
cause progressed to final hearing upon pleadings and evidence,
and a final decree was made, perpetually enjoining the execu-
tion of Hill's judgment as to the land mentioned.

The facts disclosed by the record are that Thomas E. Bugg,,
and his father, Benj. Bugg, jointly owned the tract of land,
except a parcel of it which was owned by Thomas alone, and
that they executed a deed of trust in 1867 to a trustee for the
benefit of Myers, and that the grantors remained in possession
of the property during 1867, 1868, and 1869, and that in
December, 1869, the land was sold by the trustee and pur-
chased by Emma Bugg. The trust deed conveyed personal
property as well as land, and crops to be made. The deed is
attacked as being void on its face, and as being fraudulent as
between the parties to it; but, as we are not disposed to inter-·
fere with the view of the chancellor on these questions, we
will not here state the facts on which this attack is made.

It appears that the $3,000 paid by Emma Bugg for the land
purchased by her at the trustee's sale was derived from her·

husband, and, if it was her money, in legal contemplation she is entitled to be protected in her title to the land; but if it was not her money, and was her husband's, she must be held to be a trustee of the legal title she has acquired, and if part of the money was her husband's, she must be treated as a trustee of the title *pro tanto*, for the benefit of the judgment creditor.

Emma Bugg had a few slaves in 1859, and her husband employed them on his farm, and used the proceeds of their labor as his own until they were emancipated by the result of the war, and he accounted to his wife for his indebtedness on this account, on the basis of the hire of the slaves being worth annually $325, for some seven years. Emma Bugg received from an ancestor $400, and from another $800, in different sums, which were used by Thomas E. Bugg, and he treated himself as her debtor for $1,200, on this account, besides interest on the annual hires of the slaves and on the sums of money. Being so indebted, Thomas E. Bugg handed his wife, Emma, the $3,000 with which she paid for the land. This money was derived by Bugg chiefly from the proceeds of cotton raised on the land conveyed by the deed of trust during 1867, 1868, and 1869; but this does not make any difference, so far as the rights of Emma Bugg are concerned in this suit. The real question is, was the money paid by Emma Bugg for the land her own, in whole or in part? If Thomas Bugg was legally her debtor to the full amount of the $3,000 paid by her, we must hold that the whole purchase money of the land was hers.

We repudiate the doctrine that the husband can consider himself debtor to his wife when the law does not so regard him, and upon this pay money to her or convey property to her as against his creditor. He cannot waive any defense with which the law clothes him in favor of his wife *as against his creditor*. Thomas E. Bugg owed his wife the reasonable hire of her slaves for one year from the time of receiving each one, and also $1,200 for her money received by

26

him and used, and one year's interest at 6 per cent. on this, and that is the sum total of his legal liability to his wife, as disclosed by this record. To that extent his payment to her was legal, and the money received by her was hers, and that amount of the money applied by her to the payment of this land entitles her to claim the land to that extent as her own. The remainder of the money derived by her from her husband, and used by her in the purchase of this land, was Thomas E. Bugg's money. Rev. Code, 1857, p. 337, art. 28, proviso. This proviso does not bar the wife's claim if not asserted in one year, but it limits the time during which the husband's receipt of the rents, profits, or income shall charge him. Emma Bugg is a trustee of the legal title of the land as to so much of it as was paid for with the money of her husband, and the land is subject to a charge in her hands in favor of the judgment creditor for the amount which may be shown to have been used by her of the money of her husband in its purchase.

The decree is reversed, and the cause remanded for an account to be taken to ascertain the *data* on which to base a decree in accordance with this opinion, and, if an amendment of the pleadings is found necessary to the prosecution of the investigation in the direction indicated, application may be made to the chancellor for leave to amend.