LAFAYETTE WILLIS ET AL. *v.* JACOB GATTMAN.

1. MARRIED WOMEN.  *Separate estate.   Act of* 1839.   *Conveyance by father to children.   Consideration.*

   Slaves received by a wife prior to the act of 1839 became the property of her husband, and he could not, as against his creditors, allow his wife hire therefor.   Money received after that act, in 1843, was the property of the wife, and the husband had the right to repay it to her or her children, with one year's interest thereon.   Hence a conveyance by the husband, after his wife's death, to his children, in 1865, on consideration of such money and hires, is, as against his creditors, supported by a valuable consideration as to the money, but voluntary as to the hires.

2. EQUITY. *Correction of mistake. Bill by sub-vendee against judgment creditor of original vendor.*

   A purchaser for value, without notice, from the grantee, who had received from his grantor a deed from which a portion of the land intended to be conveyed was omitted by mistake, can maintain a bill against a judgment creditor of the original grantor, to displace the apparent lien of the judgment on the omitted portion and to correct the mistake.

3. DEED. *Married woman. Certificate of acknowledgment. Cannot be contradicted by parol.*

   A deed by a married woman, the certificate of acknowledgment to which does not show a private examination, is a nullity; nor is it competent to show by parol, in contradiction of the certificate, that a private examination did, in fact, take place.

4. LIS PENDENS. *Conveyance by fraudulent grantee after suit. Assignment voluntary in part as to creditors.*

   Where a deed made by a father to his children is supported by a valuable consideration as to half the land, but voluntary as to the other half, the children are seised of the legal title to one-half the land, as trustees of their father's creditors; and a conveyance made by one of the children, after a bill filed by a creditor on a judgment rendered against the father, upon a claim prior to the father's deed, cannot defeat the right of the creditor to subject one-half of such child's portion of the land.

5. EQUITY. *Correction of mistake. Married woman. Defective certificate of acknowledgment.*

   Where a married woman, who, holding land by a deed from which, by mistake, a part of the land intended to be conveyed was omitted, has conveyed said land, on valuable consideration, the certificate of acknowledgment showing no private examination, the instrument is a nullity, and imposes no obligation on her, either at law or in equity; and, after the rights of a judgment creditor have intervened (the vendee's rights against her being the limit of his rights against the creditor), she cannot voluntarily execute a proper deed to the land, nor can she, on a bill filed by her vendee, be compelled to correct the mistake.

APPEAL from the Chancery Court of Monroe County.

Hon. L. HAUGHTON, Chancellor.

In November, 1837, Austin Willis married Arrilla Dyche, the daughter of Isaac R. Dyche, of Monroe County, Mississippi. At her marriage, Mr. Dyche presented his daughter with some slaves, who were controlled and managed by her husband, and he received the productions of their labor. The legislature of Mississippi, on the 15th of February, 1839,

passed an act, entitled "An Act for the protection and preservation of the rights of married women (Hutch. Code, p. 496), the first section of which act was as follows: —

"Any married woman may become seised or possessed of any property, real or personal, by direct bequest, demise, gift, purchase, or distribution, in her own name, and as of her own property: *Provided*, the same does not come from her husband after coverture."

In 1843, her father having died, Mrs. Willis received from his estate $3,000, with which Austin Willis purchased for her a tract of land. He sold that tract in 1855, with the proceeds purchased a plantation in his own name, and went on it to reside. Having contracted, during 1861, an indebtedness to Jacob Gattman, on 12th April, 1862, Mr. Willis gave his note therefor. During the war his residence was burned, his property destroyed, and his place became dilapidated, so that in 1865 he was involved in security debts, and generally embarrassed. Mrs. Willis died; and to repay his children what he conceived he owed their mother, Austin Willis, on the 7th July, 1865, conveyed the plantation aforesaid to J. P., J. R., Leonora and Mary F. Willis. The consideration expressed in the deed was $5,000, but the real consideration was the $3,000 received from the estate of his father-in-law and the hire of the slaves aforesaid. Having no other home, Austin Willis continued to reside, with his children, on this plantation, after the conveyance, just as he had done before. A map of the land was given to the scrivener to whom was intrusted the drawing of the deed; but, by mistake, he omitted from the conveyance a certain forty-acre tract, other than that on which the family resided. Leonora Willis was subsequently married to E. H. Thompson. Afterwards, on 29th February, 1872, all the children sold and conveyed the plantation to one Lafayette Willis, for $6,300, who purchased and paid for the land, without notice either that the forty-acre tract had been omitted from the deed by Austin Willis, or that Austin's deed was voluntary or in fraud of his creditors. Mrs. Leonora Thompson, in making her acknowledgment to this deed to Lafayette, was, by the magistrate, examined separate and apart from her husband, as required by the statute; but in affixing his certifi-

cate to the deed, by oversight, he omitted so to state.  On 12th
March, 1873, Jacob Gattman obtained a judgment on his note,
against Austin Willis, on which an execution was issued, and
levied on the forty acres omitted from Austin Willis's deed.
Lafayette Willis and J. P., J. R. and Mary F. Willis, with Mr.
and Mrs. Thompson, then filed their bill in chancery, to enjoin
the sale under the execution.  To this bill answering, Gattman
made his answer a cross-bill, pointing out the defective acknowl-
edgment by Leonora, charging that Austin's conveyance was
fraudulent, and seeking to subject the entire place.  After the
cross-bill was filed, Austin Willis made a new deed to J. P.,
J. R., and Mary F. Willis and Mrs. Leonora Thompson, con-
veying the omitted forty acres ; and Mrs. Thompson and her
husband jointly executed a deed to Lafayette Willis, contain-
ing the forty acres as well as the remainder of the place, and
properly acknowledged.  All the parties answered the cross-
bill, Lafayette Willis setting up that he was an innocent pur-
chaser for value without notice.

The questions presented are, —

1.  Whether the deed of 1865, from Austin Willis to his
children, was on a consideration valid against his then existing
creditors, of whom Gattman was one ?

2.  Whether Lafayette Willis, the sub-vendee for value, with-
out notice, can maintain a bill against Gattman, a judgment
creditor of the original vendor, to displace the apparent lien of
the judgment on the omitted portion of the land, and correct
the mistake ?

3.  Whether it is competent to show by proof that in point of
fact Mrs. Leonora Thompson was examined by the magistrate
separate and apart from her husband, notwithstanding the cer-
tificate of that officer to the deed of 29th January, 1872, fails
to show such examination ?

4.  What was the effect of the deed from Austin Willis to
his children, conveying the omitted forty acres, and the prop-
erly acknowledged deed from Mrs. Leonora Thompson and her
husband to Lafayette Willis, both made after the cross-bill of
Gattman was filed ?

5.  Can Mrs. Leonora Thompson, her deed of 1872 being void
for want of a proper certificate, be compelled by Lafayette

Willis, after the rights of the judgment creditor, Gattman, have attached, to correct the accidental omission of the forty acres of land ?

The allegations of the pleadings showing how these questions arise, and the decree showing how they were decided by the Chancellor, are substantially stated in the opinion of the court.

*Baxter McFarland*, for the appellants.

1. Courts of equity have power to correct mistakes in deeds, in favor of those in privity with the parties to the original instrument, as well as in favor of the parties themselves. 1 Story Eq. Jur. §§ 152 to 166 inclusive ; *Hyde* v. *Warren*, 46 Miss. 13 ; *Dunbar* v. *Newman*, 46 Miss. 231 ; *Simmons* v. *North*, 3 S. & M. 67 ; *Jenkins* v. *Bodley*, S. & M. Ch. 338 ; *Gillespie* v. *Moon*, 2 Johns. Ch. 585 ; *Ells* v. *Tousley*, 1 Paige, 280 ; 6 Paige, 347 ; *Mosby* v. *Wall*, 23 Miss. 81. Lafayette Willis is in such privity with the transaction as to authorize the correction, more especially as the parties against whom the mistake occurred join in the bill. *Hyde* v. *Warren* and *Dunbar* v. *Newman*, in 46 Miss., do not apply to the facts of the case at bar.

The right of the parties *inter sese* to have the deed corrected being clear, has Gattman such an equity by reason of his judgment as to prevent the reformation ? Lafayette Willis was in possession of the omitted forty-acre tract ; and possession is notice of the possessor's rights, legal or equitable. *Dixon* v. *Lacoste*, 1 S. & M. 70 ; *Hall* v. *Thompson*, 1 S. & M. 443 ; *Wilty* v. *Hightower*, 6 S. & M. 345 ; *Edmonson* v. *Orr*, 12 S. & M. 541 ; *Jones* v. *Loggins*, 37 Miss. 546 ; *Perkins* v. *Swank*, 43 Miss. 349 ; *Bell* v. *Flaherty*, 45 Miss. 694 ; *Taylor* v. *Lowenstein*, 50 Miss. 278. Nothing can be sold under execution but what the judgment debtor owns. The sale is made subject to all equities and legal demands of others. *Walton* v. *Hargroves*, 42 Miss. 18 ; *Simmons* v. *North*, 3 S. & M. 67 ; and authorities cited *supra.*

2. The defence relied on in the answer and cross-bill of Gattman is virtually that Lafayette Willis has no right to have the deed corrected, because both the conveyance to him and that of Austin Willis to his vendors are void, because intended

to "hinder, delay and defraud" Austin Willis's creditors. The money of Mrs. Austin Willis, which was received in 1843, did not belong to her husband. The act of 1839 (Hutch. Code, 496, art. 4, § 1) gave it to her. Money is included under that act. *Mitchell* v. *Mitchell*, 35 Miss. 108. *Lowery* v. *Craig*, 30 Miss. 19, referred to by opposing counsel, was where the wife claimed a *chose in action.*

If Austin Willis used her money, he owed her for it, and it formed a good consideration for the conveyance to her heirs. In any view, Lafayette Willis is an innocent purchaser for value without notice, and entitled to have the deed reformed. His equity is superior to Gattman's. *Qui prior est tempore, potior est in jure.*

3. Gattman held and the court decided that his judgment should subject Mrs. Leonora Thompson's interest (one-fourth), because she did not acknowledge the deed to Lafayette Willis in accordance with the statute, and upon the assumption that Austin Willis's deed was void for fraud. It is contended that parol testimony cannot be used to establish the fact of a separate examination. The cases in 3 and 11 Conn., referred to by adverse counsel, were cases of *ejectment*, involving the validity of *legal* titles, and the object was to prove those titles by parol. Quite different is the case at bar, and the object of the testimony here. If, in those cases, the parties holding the defective titles had applied in chancery to have the deeds corrected, would not the court, had they been *bona fide* purchasers for value without notice, have extended the relief? Would not their purchase and payment constitute such an *equity* as to call for the exercise of the corrective power of the court, if the omission to correctly acknowledge was accidental? So here the parol testimony was not introduced to make out *aliunde* the certificate, — a *legal* title; but, in connection with other testimony, to show the *equitable* right of Lafayette Willis to the interest she *intended* to convey to him. That she did in fact properly acknowledge the deed is the best possible evidence of Mrs. Thompson's intention and of Lafayette Willis's right to have the legal title. After the suit was begun, she did actually, with her husband, make a proper deed; and

she joins in the bill to have the correction made. Under such circumstances, there can be no reason why the court will not, in favor of the *bona fide* purchaser, displace the apparent lien of Gattman's judgment, and decree the correction to be made. She has no right to both the purchase-money and the land. Lafayette Willis is entitled to the one or the other. *Foxworth* v. *Bullock*, 44 Miss. 457.

*Houston & Reynolds*, for the appellee.

I. The Chancery Court should not have corrected the mistake or omission in the deed as against Gattman.

We do not question the right of a court of equity to correct mistakes in written instruments as between the original parties and privies; and on the authority of *Simmons* v. *North*, 3 S. & M. 67 (though we believe it to be " most apocryphal law "), " against judgment creditors and purchasers from them with notice." But in all cases, in the correction of such mistakes, " the party asking relief must stand upon some equity superior to that of the party against whom he asks it. If the equities are equal, a court of equity is silent and passive. Thus equity will not relieve one person, claiming under a voluntary defective conveyance, against another, claiming also under a voluntary conveyance; but will leave the parties to their rights at law." 1 Story Eq. Jur. § 176, and authorities there cited.

If the conveyance from Austin Willis to his children was voluntary, or made to defraud creditors, it will not be reformed as against the lien of Gattman's judgment; and if the deed could not be corrected as between these parties against Gattman, Lafayette Willis, their vendee, could acquire no additional or higher equity by virtue of the conveyance to him. The conveyance from Austin Willis to his children was without consideration, and made with intent to defraud creditors.

Counsel for the appellants contend that Austin Willis was indebted to his wife for a tract of hers, which he sold, amounting to $3,000. The money of the wife, in 1843, was the money of the husband, as the law then was. *Lowery* v. *Craig*, 30 Miss. 19. So, on the land transaction, Willis was not indebted to his wife.

As to the hires of the slaves, it will be seen that they were the property of the husband, the wife having received the slaves before the passage of the woman's law of 1839.

If correct in these conclusions, Willis was not indebted to his wife; and if not so indebted, then his deed to his children was without consideration; and if without consideration, it should not be corrected so as to defeat the lien of Gattman's judgment.

II. The decree of the Chancery Court, subjecting Mrs. Thompson's interest in the land, was not erroneous.

1. We have endeavored to show that the deed from Austin Willis to his children was without consideration, and the testimony and attending circumstances show it was fraudulent as to creditors. Gattman was a creditor whose claim was in existence at the time of the conveyance.

2. Mrs. Thompson being a married woman, and her conveyance to Lafayette Willis, not having been acknowledged separate and apart from her husband, was void, and the title remained in her.

Lafayette Willis may have been a *bona fide* purchaser for value (we think the testimony shows to the contrary); and if such a purchaser, he would be protected, notwithstanding the fraud between his vendees and their vendor: yet he is not protected so far as the interest of Mrs. Thompson is concerned, and because of the defective conveyance, he never acquired her interest.

The statute, § 2315, not only provides the form of acknowledgment, but the officer taking the same shall make certificate thereof. This certificate is the only legal evidence of the fact. A married woman may acknowledge in the manner prescribed by the statute, yet her deed will not pass her title unless the officer gives the certificate. The acknowledgment must appear on the deed, and cannot be proved by parol evidence. *Pendleton* v. *Button*, 3 Conn. 406. No defect in the certificate of the magistrate can be helped by parol evidence. *Hayden* v. *Wescott*, 11 Conn. 129; *O'Ferrall* v. *Simplot*, 4 Iowa, 381.

CHALMERS, J., delivered the opinion of the court.

In 1865, Austin Willis conveyed to his children a tract of land containing about one thousand acres, in repayment, as he claims, of certain money and property which he had received and used, belonging to his deceased wife, their mother. By mistake of the scrivener who prepared the deed forty acres of the land were omitted ; but the children took possession of all the land, which constituted a single plantation.

In 1872, the children, all of whom were adults, sold and conveyed the land, for value, to Lafayette Willis. In their deed to Lafayette Willis, the forty acres which had been omitted from the deed made by their father were embraced ; nor were any of the parties then aware that they had been omitted from the first deed.

Lafayette Willis took possession of the land, including the forty acres. One year after his purchase and possession, Jacob Gattman recovered judgment against Austin Willis, on a note given previous to 1865, and levied on the forty acres which had been omitted from the first conveyance, and the legal title to which consequently remained in Austin. Thereupon Lafayette Willis filed his bill, alleging the mistake, and praying its correction, and enjoining a sale of the land levied on. To his bill he made Austin Willis and his children parties defendant, as also Gattman. Austin and his children answered, admitting the mistake and offering to correct it.

Gattman, neither admitting nor denying the mistake, answered, charging that the original conveyance from Austin to his children was fraudulent as to existing creditors, of whom he was one, and that Lafayette Willis had notice of the fraud. He alleged further, that one of Austin's children, Mrs. Leonora Thompson, was a married woman ; and that though she had signed the conveyance to Lafayette Willis, she had never acknowledged it separately from her husband, and therefore had never conveyed the title ; and that she having fraudulently received the same from her father, the whole of her one-fourth interest in the tract was liable to his judgment.

He made his answer a cross-bill, praying to subject the forty acres, as well as the interest of Mrs. Thompson in the whole tract, to his judgment.

Mrs. Thompson answered, that, while it was true that the certificate of the magistrate before whom she made her acknowledgment failed to show a privy examination, that, in point of fact, she had properly acknowledged the deed ; and that, by way of putting the matter beyond doubt, she had, since the filing of the cross-bill, executed to Lafayette Willis another deed, properly acknowledged, by which she had conveyed all of her interest in the land, as of the date of the former deed.

Lafayette Willis answered, denying that the conveyance from Austin to his children was voluntary, colorable or fraudulent, and averring in any event his innocence of any knowledge or participation in such fraudulent purpose or fact.

Upon proof taken, the Chancellor held that the conveyance from Austin Willis to his children was voluntary, and therefore void as to his creditors ; that Lafayette Willis could not assert against Gattman a right to reform and correct the mistake by which the forty acres had been omitted from the original deed ; that the one-fourth interest of Mrs. Thompson still remained in her, and, she being a voluntary grantee, that the same could be subjected to Gattman's judgment. From a decree rendered in accordance with these conclusions Lafayette Willis prosecutes this appeal.

A careful examination of the testimony leads us to the conclusion that the conveyance by Austin Willis to his children was not entirely voluntary, but was excessive. He had received from his wife, in 1843, $3,000 in money, which, under the act of 1839, was her separate property. *Mitchell* v. *Mitchell*, 35 Miss. 108. This money he had the right to repay to her or her children, with one year's interest thereon, which would make $3,300. *Hill* v. *Bugg*, 52 Miss. 397.

The negro property, for which he allowed his wife hires, was received previous to 1839, and therefore became the property of the husband. The land conveyed was worth, as shown by the testimony, $6,000 or $7,000, double the amount due ; and, therefore, Gattman could subject one-half of it, in the hands of the children, to the satisfaction of his judgment. But it was conveyed by the children to Lafayette Willis, before the date of the judgment, for $6,300, paid in money ; and

Lafayette avers his ignorance of any fraud or any knowledge that the children were volunteers, and there is nothing shown to fix knowledge on him. He therefore is a purchaser for value without notice.

Can such a purchaser, having received a deed, from which a portion of the land intended to be conveyed was omitted by mistake, maintain a bill against a judgment creditor of the grantor to displace the apparent lien of the judgment on the omitted portion, and to correct the mistake?

This question is answered in the affirmative by a uniform current of authorities. 1 Story Eq. Jur. § 165; *Simmons* v. *North,* 3 S. & M. 67; *Wall* v. *Arrington,* 13 Ga. 88; *White* v. *Wilson,* 6 Blackf. (Ind.) 448; *Stone* v. *Hale,* 17 Ala. 557; *Ells* v. *Tousley,* 1 Paige, 280; *Gouverneur* v. *Titus,* 6 Paige, 347. So much of the decree of the court below, therefore, as denied the relief prayed in the original bill as to the omitted forty acres, is erroneous.

Was that portion of the decree correct which subjected to the satisfaction of the judgment the undivided one-fourth interest of Mrs. Leonora Thompson in the entire tract?

Under the view taken by us of the testimony, the deed made by Austin Willis to his children, of whom Mrs. Thompson was one, was voluntary as to half the land, but supported by a valuable consideration as to the other half. They were seised then of the legal title to one-half of the land, as trustees for the creditors of their father. At the date of the rendition of Gattman's judgment, Mrs. Thompson had made no valid conveyance to Lafayette Willis, her deed to him, without privy examination and acknowledgment, being a nullity; nor was it competent to show by parol, in contradiction of the certificate, that there had in fact been a privy examination. *O'Ferrall* v. *Simplot,* 4 Iowa, 396; *Hayden* v. *Wescott,* 11 Conn. 129; *Elliott* v. *Peirsol,* 1 Pet. 338; *Johnston* v. *Wallace, ante,* 331.

It follows that, at the time of the filing of the bill and cross-bill in this case, the judgment creditor had the right to subject to his debt one-half of the interest of Mrs. Thompson in the land.

Could she defeat that right by thereafter voluntarily exe-

cuting to Lafayette Willis a proper deed? She could not have been compelled to execute such a deed, because it is well settled that a bill is not maintainable against a married woman, either to compel her to carry out an executory contract for the sale of her lands improperly acknowledged, or to correct a mistake in a conveyance duly executed by her. Being allowed to convey only in the manner prescribed by the statute, an instrument executed in any other manner is a nullity, and imposes no obligation upon her, either in a court of law or equity; and where it has been properly acknowledged, but there is a mistake in the lands, there is, as to the omitted portions, no execution at all. *Martin* v. *Dwelly*, 6 Wend. 9; *Carr* v. *Williams*, 10 Ohio, 305; *Butler* v. *Buckingham*, 5 Day (Conn.), 492; *Grapengether* v. *Fejervary*, 9 Iowa, 163.

If Gattman was the judgment creditor of Mrs. Thompson, Lafayette Willis could assert against him such equitable rights as he could assert against her, because the judgment creditor takes only the rights of his debtor; but where, as in this case, he has no equitable rights which he could assert against her, he would be powerless to assert any against her judgment creditor; and, inasmuch as his rights against her are the limit of his rights against Gattman, it must follow that neither with nor without her co-operation can the right of the latter to subject one-half of her interest in the land to his judgment be defeated. She is to be treated as having made no conveyance whatever, and as holding one-half of her interest in the land as trustee for the judgment creditor.

We think, therefore, that the Chancellor was correct in holding that Mrs. Thompson could not confer any new rights upon Lafayette Willis by her second deed, but he should have limited Gattman's relief, under his cross-bill, to one-half of her interest, she being a purchaser for value as to the other half.

*The decree is reversed and cause remanded, that a decree may be rendered in accordance with this opinion.*