## PAXTON *v.* MARSHALL.[1]

### (*Circuit Court, N. D. Illinois.* July 14, 1883.)

1. DEED OF TRUST—WIFE'S SIGNING—ACKNOWLEDGMENT—HOMESTEAD EXEMPTION IN ILLINOIS.

Where it appears that a wife has signed a deed of trust, and that the same was acknowledged before the proper officer and recorded in the proper office, thereby becoming an apparent muniment of title upon the property of which she was the owner, *held,* as against a person who, in good faith, loaned money upon her title, she cannot, as against such person, claim that her husband deceived her as to the identity of the land named in the deed of trust which she signed, and thereby defeat the apparent title to the lot. And *held, further,* that, as between a person who, in good faith, loans money upon such title and the wife, the latter should be the one to suffer in consequence of the wrongful act of her husband.

2. SAME—FAILURE TO PROPERLY ACKNOWLEDGE—EFFECT UPON HOMESTEAD INTEREST.

Under the above state of facts, and the deed of trust being of homestead property, *held,* that where such deed was not properly acknowledged it did not convey the homestead, but the title to the lot subject to the homestead. The homestead right is a statutory right, and can only be released as prescribed by the statute, which requires that such deed shall be acknowledged before the proper officer.

In Equity.

*Boutell, Waterman & Boutell,* for complainant.

*Paddock & Ide,* for defendant.

DRUMMOND, J. James M. Marshall and Susan C. Marshall, his wife, on the thirteenth of February, 1872, made a deed of trust on a certain lot on Indiana avenue, near Twentieth street, in Chicago, to secure the sum of $10,000, due by James M. Marshall to the complainant. The money not having been paid in conformity with the terms of the deed of trust, the property was sold by the trustee and bid in by the complainant. This was a bill filed by him against the defendants for the purpose of quieting the title to the lot, because

[1]Affirmed. See 8 Sup. Ct. Rep. 592, *sub nom.* Knight v. Paxton.

Mrs. Marshall claimed that the deed of trust signed by her was executed under circumstances that rendered it inoperative as against her, she being at the time the real owner of the lot. Prior to this time several incumbrances had been made by her and her husband on the land, one of which was in favor of the complainant, and a part of the $10,000 in the deed of trust of February, 1872, which were satisfied when the deed of trust was executed. Mrs. Susan C. Marshall has filed a cross-bill alleging that the lot was hers, and her homestead, and that the deed of trust was obtained from her by fraud, and that it was never acknowledged. The case comes before me on exceptions to the report of the master, who found that the allegations of the original bill were established, and that the complainant was entitled to a decree. No distinct finding was made by the master upon the cross-bill.

If it be admitted that the allegations of the cross-bill, as to the circumstances connected with the execution of the deed of trust, are established by her, still, Mrs. Marshall *signed* the deed of trust, and it appearing to have been acknowledged before the proper officer, and recorded in the proper office, it became, therefore, apparently, a muniment of title upon the property of which she was the owner; and I think, as against a person who, in good faith, loaned money upon her title, she cannot, as against such person, claim that her husband deceived her as to the identity of the land named in the deed of trust which she signed, and thereby defeat the apparent title to the lot. She placed confidence in her husband; believed his representation that it was a lot on Prairie avenue, and not her homestead on Indiana avenue. The plaintiff did loan the money in good faith, and without notice of the facts alleged, and the question being whether he or she must suffer in consequence of the wrongful act of her husband, I think she is the person, and not the complainant. I should add that, notwithstanding much testimony bearing upon the mental condition of Mrs. Marshall at the time she executed the deed of trust referred to, I can have no doubt that she fully understood the effect of what she was doing, and that by her signature she was making a conveyance of a lot to which she had some right. I need not go into the particular circumstances connected with the nature of her title to the lot, as that it was conveyed to a trustee by her husband, for her benefit, before marriage, and that afterwards it was reconveyed to her by the trustee, at the request of her husband, as she says, without her knowledge. However this may be, she was the owner of the lot, and had the right to convey it.

I think the weight of the evidence is that Mr. Shortall did not take the acknowledgment, as the certificate annexed to the deed of trust states. It purports to bear date on the fourteenth of February, 1872. It is in due form. There is nothing further to sustain his official act than his statement that, from his general mode of doing that kind of business, he is confident he must have seen Mrs. Mar-

shall and taken her acknowledgment, as he certifies. He has no recollection of taking the acknowledgment to this deed of trust. He only speaks from his general and uniform mode of doing that business, and says that he never took the acknowledgment of a married woman without seeing her personally. But the testimony in opposition to this is so strong that it seems to me to overcome both the official certificate and his statement as to his general mode of performing that kind of business. There are four or five witnesses, among whom are two physicians, who state that at the time this acknowledgment purports to have been taken Mrs. Marshall was confined to her room and sick in bed; that the day when the acknowledgment purports to have been taken she was subjected to a painful operation; that she was suffering much pain for several days up to that time. It might be that some of these witnesses would be mistaken as to the precise date when this occurred, but there are two physicians who refer to their books of account, kept at the time, and who speak as to the dates from those books, thus corroborating all the other witnesses who refer to what then occurred. If this testimony is to be believed, then it is not possible that Mr. Shortall could have seen Mrs. Marshall and taken her acknowledgment, except in her room or bed-chamber. Now, while he insists that the certificate of acknowledgment is correct, he distinctly says that he never did, at any time, take her acknowledgment at or in her sick chamber. His language is: "I never went to Mrs. Marshall's sick chamber, at any time, to take her acknowledgment. I never was in Mrs. Marshall's chamber, properly so called, to take an acknowledgment. I state positively I never visited Mrs. Marshall's bed-room to take an acknowledgment." Either this is not true, if the acknowledgment was actually taken, as certified, or the testimony of all these witnesses is unworthy of credit. It seems to me more probable that Mr. Shortall was mistaken in the conclusion which he draws from his general mode of taking acknowledgments, than that all these witnesses who have so fully testified are themselves mistaken.

Several authorities have been cited by the plaintiff's counsel to the effect that in order to overcome by parol testimony the official certificate of an officer taking the acknowledgment of a deed, there must be a fraudulent combination to which the officer making the acknowledgment is a party; but wherever there is a fraudulent combination to induce the grantor to execute a deed, which requires an acknowledgment in order to give it effect, if the officer certifies that he has taken the acknowledgment of the grantor when he has not done so, he must be considered as a party to the combination; or, to be more accurate, he gives effect to the fraudulent combination by certifying to something which is untrue.

The result of these conclusions from the evidence is that Mrs. Marshall, having signed the deed of trust, and, as she says, having been deceived by her husband, she supposing that it was a deed of a

lot on Prairie avenue, when, in fact, it was a deed of a lot on Indiana avenue, her homestead, and the plaintiff having in good faith advanced the money on the strength of her title, where one must suffer, she must and not the plaintiff; so that, as to the plaintiff, this deed did convey the lot on Indiana avenue; but believing, from the evidence, that the deed was not properly acknowledged, it did not convey her homestead, but her title to the lot subject to the homestead. The homestead right is a statutory right, and the language of the statute is that in order to make a conveyance of that right it must be released as prescribed by the statute. It was not sufficient that she executed the deed, but she must have acknowledged it before an officer in the same way that deeds are generally required to be acknowledged. At the time this deed of trust was made, in February, 1872, the act of 1873 was, of course, not in force, and her right to the homestead was not an estate, but only an exemption or a privilege, and she is entitled, not having properly acknowledged the deed before an officer, to that exemption or privilege; so that she has the right to a thousand dollars, the amount fixed by the statute as the sum to which the homestead is limited, before the plaintiff is entitled to a decree in this case. I have not looked into the particular pleadings in the case, but I suppose they are of such a character that the plaintiff may be entitled to a decree upon paying the amount of the homestead privilege. It was so found, and so ordered.

---

MARRIED WOMAN'S CONVEYANCES AT COMMON LAW—FINE—PRIVATE ACKNOWLEDGMENT. At common law the deed of a married woman conveying her interest in lands which she owns in fee does not pass her interest by the force of its execution and delivery, as in the common case of a person under no legal disability. The law presumes the deed of a *feme covert* to have been made under coercion of her husband, and therefore holds it null and void.[1] It is not even enforceable in equity as an agreement to convey.[2]

But although a *feme covert* could not, at common law, make a deed, there was a method by which she could make a conveyance. This was by *fine.* This was a proceeding in court, thus described by Blackstone: "An amicable composition or agreement of a suit, either actual or fictitious, by leave of the king or his justices, whereby the lands in question become or are acknowledged to be the right of one of the parties."[3] There were four parts to a *fine:* (1) The writ; (2) the permission to agree; (3) the concord or agreement; and (4) the record. A married woman might be a party to this proceeding, whose effect was to place the title to the fee in the plaintiff so absolutely and completely that a *fine* was sometimes called a "feoffment of record;" and when a married woman was a party to a *fine,* or one of the cognizors, as the defendants were called, in order to make sure that she was acting freely, and without compulsion by her husband, she was privately examined by the court, and her acknowledgment that her act was free and voluntary, taken and entered of record. This, it is believed, is the earliest and original form of taking the separate acknowledgment of *femes covert.* Thus, by the special

---

1 Dewey v. Campau, 4 Mich. 565; Pratt v. Battles, 28 Vt. 685; Russell v. Rumsey, 35 Ill. 362.

2 Martin v. Dwelly, 6 Wend. 9. See Lane v. Dolick, 6 McLean. 200.
3 1 Cooley, Bl. 563.

and private acknowledgment taken and recorded by a court, was the presumption rebutted that the wife made her conveyance by compulsion of her husband.

It is observable that this acknowledgment was said to be a judicial act, and the record of it was not allowed to be contradicted, "for that were to lessen the credit of the judgments of the courts, which is the highest evidence of the law." [1]

STATUTORY AUTHORITY TO MARRIED WOMAN TO MAKE DEED. Subsequently, statutes conferred upon married women power to make conveyances by deed, and provided for their making a private acknowledgment of freedom from compulsion before a notary public, court, justice of the peace, alderman, commissioner of deeds, and other officers. Generally these statutes made an acknowledgment by the wife essential to the validity of her deed, and the question, Is her deed acknowledged as required by law? becomes very important. It is, of course, to be answered by a reference to evidence, the chief piece of which is the certificate of acknowledgment.

ACKNOWLEDGMENT PRESUMED TRUE—REASONS. The presumptions are all in favor of the truth of the certificate. It is not to be lightly set aside. One reason commonly urged why its impeachment should not be permitted, is that the officer who takes the acknowledgment acts judicially, and therefore his acts ought to be upheld as final. This has been declared not to be sound, for taking an acknowledgment is an *ex parte* proceeding, wherein the officer ordinarily exercises no judgment whatever. He does not ascertain that the woman is, in fact, acting freely and without compulsion. This were impossssble for him, unless he possesses means for examining the state of her mind. He simply certifies ministerially that she *acknowledged* her act to be free and voluntary; not that he has examined her mind and has concluded that it was acting freely.

Another reason for not permitting a married woman to impeach her acknowledgment is that the security of titles and protection of purchasers demand that she should not be allowed to contradict the facts certified. This is an excellent reason. It is well discussed in *Johnston* v. *Wallace*,[2] wherein the court said: "Whether the officer taking the acknowledgment acts judicially or *quasi* judicially, or both judicially and ministerially, he is the person to whom our law, in the effort to protect married women from the coercion of husbands in the execution of deeds, intrusts the duty of ascertaining by her declaration made apart from her husband that she has acted freely in executing the deed acknowledged; and when a married woman *has appeared before a proper officer,* having signed a deed and acknowledged it, and he certifies a full compliance with the statute, his certificate, *except in cases of fraud,* must be held *conclusive of the fact it asserts.* Any other rule will open wide the door for fraud upon grantees of married women. It is better to run the risk of occasional wrong to married women by officers taking their acknowledgments of deeds, than of producing the incalculable mischief of inviting efforts on the part of married women to vacate their deeds. There is far more danger that the deeds of married women will be improperly sought to be set aside, if it can be done by questioning the *manner* of acknowledging them, than that wives will be imposed upon in acknowledging deeds. The law appoints the officer taking acknowledgments as the protector and guardian of married women *pro hac vice.* Faith and credit must be given to his official act. When the married woman actually appears before the officer to acknowledge her deed, his duty of protecting her against acting from the coercion of her husband arises, and she should not be allowed to impeach the official certificate as to its statement of the manner in which this duty was

---

[1] Bac. Abr. "Fines and Recovery, C."      [2] 53 Miss. 338.

performed by the officer. As between grantor and grantee a conclusive presumption must be indulged that the officer intrusted by law with this duty, and before whom the married woman came to acknowledge the deed, did his duty when called on to perform it."

Many cases lay down the general rule that in the absence of fraud a notarial certificate of acknowledgment by a married woman is conclusive evidence of the facts recited in it.[1] Neither can defects in the acknowledgment be supplied by parol. The statute requires the acknowledgment to be in writing, and it must be written. Parol evidence is not admissible to show that the homestead was in fact waived;[2] nor that the execution was voluntary;[3] nor that the examination was private.[4] There are cases which say that the certificate is only *prima facie* evidence, but it will be found on examination that these cases, in fact, involved fraud, or that the certificate was of acknowledgment by a man, as to which another rule, resting upon other considerations, applies.

PAROL EVIDENCE ADMISSIBLE TO DISPROVE ACKNOWLEDGMENT, WHEN. The exception to the rule that a married woman's certificate of acknowledgment is conclusive, exists when, by reason of fraud or of some jurisdictional defect whereby the officer was not authorized to certify to the acknowledgment, there is, in fact, no acknowledgment at all. The discussion in *Johnston* v. *Wallace*[5] is to the point on this subject. Said the court: "But where the person never appeared before an officer to acknowledge the deed, but he falsely certifies that she did, his act is wholly without authority of law, and void *in toto*. All must be subject to the risk of occasional forgery by officers authorized to take acknowledgments. Although liable to be deceived and imposed on by such an act, no one can claim that a married woman's estate should be divested by forgery; and when she did not, in fact, appear before the officer to acknowledge, although he may certify that she did, she may show she did not; for his act is *wholly without authority*, and she but rights herself and wrongs no one in proving the truth of the case, for no one can claim by virtue of a forgery. The law requires no other evidence of the acknowledgment of a deed by a married woman but the prescribed official certificate. Indeed, no other evidence of acknowledgment besides the official certificate can be received. A cloud of witnesses attesting the fact of the fullest acknowledgment will not supply the want of the official certificate of acknowledgment, or an omission in it when made. The certificate, being the only evidence, must be conclusive, except when fraudulent, *and the grantee has this character of it brought home to him.*"[6]

In *Michener* v. *Cavender*[7] a married woman's estate was mortgaged without any acknowledgment being given by her of the mortgage; held that, as to her, the mortgage was void, and that the mortgagee, although without knowledge of the fraud upon her, was not a *bona fide* purchaser, nor was it necessary to prove notice to him of the fraud or mistake. Said the court, by WOODWARD, J., as to the mortgagee being a purchaser without notice: "If the doctrine of notice is to be applied in this manner, no married woman's estate is safe, and the statutes that have been passed for her protection are as

---

1 Withers v. Baird, 7 Watts, 227; Jamison v. Jamison, 3 Whart. 457; Barnett v. Barnett, 15 Serg. & R. 72; Shrader v. Decker, 9 Pa. St. 14; Louden v. Blythe, 27 Pa. St. 22; Michener v. Cavender, 38 Pa. St. 334; Hall v. Patterson, 51 Pa. St. 289; Hatley v. Fresh, 6 Tex. 208; Baldwin v. Snowden, 11 Ohio St. 203; Bissett v. Bissett, 1 Har. & McH. 211; Ridgeley v. Howard, 3 Har. & McH. 321.

2 Ennor v. Thompson, 46 Ill. 215.

3 Leftwich v. Neal, 7 W. Va. 569.

4 Willis v. Gatman, 53 Miss. 731; O'Farrell v. Simplot, 4 Iowa, 396; Hayden v. Wescott, 11 Conn. 129; Elliott v. Piersol, 1 Pet. 338; Johnston v. Wallace, 53 Miss. 331. See, generally, Board v. Davieson, 65 Ill. 124; Robinson v. Noel, 49 Miss. 253; Stillwell v. Adams, 29 Ark. 346; Stone v. Montgomery, 35 Miss. 83; Elwood v. Klock, 13 Barb. 55.

5 Supra.

6 Johnston v. Wallace, 53 Miss. 338.

7 38 Pa. St. 337.

worthless as waste paper ; for whenever her husband goes into a conspiracy to strip her of her lands, the transaction is not likely to be attended with any circumstances of notice that are susceptible of proof. Here, for instance, is a mortgage made upon Mrs. Michener's separate estate, made to a convey-ancer, and duly witnessed and acknowledged, which, for aught that appears of record, she never saw nor heard of until she was sued upon it by this *scire facias.* Her name appears to the printed copy on our paper books, but when and by whom it was subscribed to the original instrument does not appear. It certainly was not there when the alderman witnessed and acknowledged the mortgage. The statute requires the signature to precede the acknowledg-ment, and without signature and acknowledgment, according to the statute, it is not and cannot be a mortgage of her estate. To call the mortgagee a *bona fide* purchaser, and to put her to proof that he knew she had been cheated, would be like making her right to reclaim stolen goods dependent on the re-ceiver's knowledge of the felony. Suppose the mortgage was a forgery out and out, and Cavender chose to invest his money in a purchase of it, must it be enforced because he did not know he was buying a forged instrument? An instrument known to be forged would not be purchased, and would, therefore, be worthless to the forger. Counterfeit notes would never be issued if a herald went before to proclaim their spuriousness. But because they were taken without notice do they become genuine? Is every bank and individual to redeem whatever obligations *bona fide* holders may obtain against them, without regard to the question whether the obligation was ever issued or not? To carry the doctrine of notice to such an extent would sub-vert all law and justice." [1] Subsequently the same court said: "There may be cases of gross fraud, in which parol evidence would be received unless the land had passed into the hands of a purchaser for a valuable consideration, without notice of the fraud. I have known of two cases of forged deeds where the justice who took the acknowledgment was imposed on by a person who took the name of the supposed grantor. There, parol evidence was re-ceived, and so I think it would be admissible to prove collusion between the husband and the justice, in consequence of which it was falsely certified that the wife had appeared and made an acknowledgment such as is required by law." [2]

If the magistrate, notary, or other officer were interested in the transaction, he would not be competent to take the acknowledgment of a married woman. But the solicitor of her husband has been held competent.[3]

A magistrate bound to make title by a conveyance from a third person is incompetent to receive the acknowledgment of the wife of the grantor. Such an ackowledgment is void *ab initio.* GIBSON, J., said: "But the acknowl-edgment was palpably insufficient to bar the dower of Baxter's wife. The of-fice of a magistrate, in respect to private examination, is a judicial and a del-icate one. Intrusted with the business of inspecting the wife's knowledge and will, he should be superior to all exception on the score of impartiality. When he is bound to procure her concurrence, his inducement to abuse his trust is as strong as if the conveyance were made to himself; and it would not be pretended that his judicial functions could be exercised in his own case. His responsibility for the conveyance, whether through himself or di-rectly to the defendant, made him equally a party in interest, and no consent short of an agreement by the vendee to take a defective title, which is not pretended, could supply the place of a separate examination. To say the wife may precedently waive her protection from it, would be absurd. She can waive nothing or assent to nothing, except in the way pointed out by the law." [4]

---

[1] Michener v. Cavender, 38 Pa. St. 337.
[2] Per TILGHMAN, J., in Barnet v. Barnet, 3 Whart. 72.

[3] Romanes v. Frazer, 16 Grant, (U. C.) Ch. 97; 17 Grant, (U. C.) Ch. 267.
[4] Withers v. Baird, 7 Watts, 228.

But the relationship of the officer to one of the parties does not disqualify him from taking the acknowledgment.[1]

It may also be shown by parol that the magistrate was not a justice of the peace of the county wherein the land was situate.[2] But where the acknowledgment of a mortgage of real estate was in the form, "*E. County—ss.:* Before the subscriber, a justice of the peace of said county," etc., and the justice was of C. county, the land was situated there, and the mortgage recorded there, *held*, that parol evidence was admissible to show that the acknowledgment was taken in C. county.[3] It may also be shown by parol that the court where the acknowledgment was taken was or was not a court of record.[4] The foregoing are cases of jurisdictional defects which may be shown by parol. Facts showing fraud upon the wife may also be thus proved. Some of such facts were referred to in the cases of *Johnston* v. *Wallace* and *Michener* v. *Cavender*.[5]

It must be remembered that in order to overturn a certificate a clear case of fraud or want of jurisdiction in the office must be made out. The facts relied upon to avoid the acknowledgment must be pleaded.[6] The *onus* rests upon the wife.[7] A mere preponderence of proof of fraud will not suffice; it must be clear, strong, and assuring.[8] The uncorroborated evidence of the grantor has been held insufficient to overcome the certificate.[9] In *Hughes* v. *Coleman*[10] the evidence of two women, one of whom was busily engaged at the time of acknowledgment, and neither of whom had any special interest in the matter, was held insufficient to overbear the testimony of the mortgagee and the notary as to the wife's private examination. In *Allen* v. *Lenoir*[11] it appeared that the wife had called upon the proper officer to acknowledge a mortgage, but found him drunk and incapable of transacting business. She left the mortgage but never acknowledged it. Subsequently the officer stated to the husband that " he had been told that Mrs Lenoir had been there, but he was not fit to be seen by a lady, and did not see her, and had not seen her since, but that as she had previously acknowledged a similar mortgage before him, and he knew her handwriting, he would not give them further trouble, but would certify to it." This evidence was rejected as being hearsay. The wife's unsupported testimony that she never acknowledged the deed, being absent in another state, will not overcome the certificate.[12]

Where the notary swore he *presumed* he did all the law required, *but did not recollect*, and two witnesses swore that the husband was present, that the deed was *not* read, and that the husband urged the wife to sign it, the certificate was overthrown.[13] Where it was shown by parol that the husband was present, that the wife could not understand English, and he explained the deed to her, the acknowledgment was held not good.[14] But it has been held not essential that the *explanation* should be given apart from the husband, so long as the acknowledgment was private.[15] In *Jackson* v. *Schoonmaker*[16] it was held error not to admit parol evidence that one who had acknowledged a deed 50 years previously was *non compos* at the time of acknowledgment.

Where, in consequence of a defective acknowledgment by a wife, no title passed to the purchaser, a subsequent statute declaring the acknowledgment

[1] Lynch v. Livingston, 6 N. Y. 433.

[2] Scott v. Gallagher, 11 Serg. & R. 347.

[3] Angier v. Schiefflin, 72 Pa. St. 106; Bennett v. Paine, 7 Watts, 334.

[4] Pierce v. Hakes, 11 Harris, 231.

[5] Supra.

[6] Marsh v. Mitchell, 26 N. J. Eq. 497.

[7] Hourtienne v. Schnoor, 33 Mich. 274.

[8] Hughes v. Coleman, 10 Bush, 248.

[9] Lickman v. Harding, 65 Ill. 505.

[10] 10 Bush, 248.

[11] 53 Miss. 324.

[12] Canal & Dock Co. v. Russell, 68 Ill. 426; Kerr v. Russell, 69 Ill. 666; Marsten v. Brittenham, 76 Ill. 611.

[13] Woodward v. Foulds, 7 Bush, 222. See Ford v. Teal, Id. 156.

[14] Fisher v. Meister, 24 Mich. 447. See, also, Kavanaugh v. Day, 10 R. I. 393.

[15] Moorman v. Board, 11 Bush, 135; Thayer v. Torrey, 37 N. J. Law, 339.

[16] 4 Johns. 161.

and deed valid is unconstitutional as an attempt to divest the vested rights of the wife.[1]　　　　　　　　　　　　　　　　　　　　ADELBERT HAMILTON.

*Chicago.*

1 Grove v. Todd, 41 Md. 633; Good v. Zercher, 12 Ohio, 364; Russell v. Rumsey, 35 Ill. 362.